CHARLES ESCHMANN et al.

*v.*

ARTHUR LORD et al.

[Decided December 4th, 1920.]

1. One who has a claim for tort against a grantor at the time when he makes a conveyance and subsequently reduces it to judgment, is entitled to the benefit of the statute as to fraudulent conveyances as a creditor as of the time of the conveyance.

2. In a suit to set aside a conveyance as fraudulent, the undisputed testimony of the grantor and the grantee (who were brothers) as to the indebtedness which was the basis of the conveyance, together with the appearance of age of the evidence of indebtedness, *held* sufficient to show consideration.

3. An insolvent may prefer a creditor, and the creditor may accept the preference as security, or to extinguish his debt, so long as the creditor did not participate in the purpose of the insolvent to prevent others from getting his property to satisfy a judgment.

4. A conveyance by an insolvent to a creditor, though *bona fide* as to him, will to the extent of his debt be held as security as against other creditors.

5. The wife of an insolvent who joined in her husband's deed to prefer one of his creditors is not entitled to dower in the proceeds of sale where the conveyance is treated as security as against other creditors.

On bill to set aside conveyance.

*Messrs. King & Vogt,* for the complainants.

*Mr. John B. Walsh,* for the defendants.

FIELDER, V. C.

The bill of complaint is filed to set aside a conveyance of real estate made by defendants Arthur Lord and Lily M., his wife, to the defendant James W. Lord, on the ground that it was made to hinder, delay and defraud complainants in the collection of a claim for damages which they had against Arthur Lord.

September 12th, 1918, the complainant Carolyn Eschmann sustained personal injuries by being struck by an automobile driven by Arthur Lord. In a suit for damages afterward brought in the New Jersey supreme court by both complainants against him, Carolyn Eschmann recovered judgment for $2,500, and her husband, the complainant Charles Eschmann, recovered judgment for $1,500, with costs of suit.

The statute under which this suit is brought extends its protection to all persons having a valid cause of action arising from torts, as well as from contracts, and when the tort claimants reduced their claims to judgment, the judgment related back and became a judgment as of the time when the cause of action accrued and constitutes them as then existing creditors. *Washington National Bank* v. *Beatty,* 77 *N. J. Eq.* 252.

The defendants Arthur Lord and James W. Lord are brothers. They claim that at the time of the accident, Arthur was indebted to James in the sum of $2,300 for money loaned by James to Arthur three years prior, and that the conveyance was made in payment of that debt. The evidence to establish the debt and concerning the conveyance was given on final hearing by Arthur and James, and no witness was called to contradict or impeach their testimony. Such evidence was to the following effect:

In 1915, the premises in question, consisting then of a vacant lot, was conveyed to Arthur Lord, and in July or August of that year, he commenced the erection of a dwelling-house thereon, which was completed in October. He borrowed all, or nearly all, of the money required for the purchase of the lot and the

erection of the house from James in three installments, and gave James receipts or due bills therefor. Three receipts signed by Arthur were put in evidence, the first dated March 10th, 1915, for $500; the second dated May 1st, 1915, for $1,600, and the third dated October 21st, 1915, for $200. They acknowledge receipt of the respective amounts and promise to repay the same (without date) with interest at six per cent. and they were held by James from on or about their respective dates until after the conveyance to him. On the night of the day the accident occurred, Arthur, fearing a suit for damages because of the injury to Mrs. Eschmann, consulted a lawyer as to how he could protect his brother for the debt due him, and the same night he wrote James, who resided in Buffalo, New York, telling the latter of the accident, and that he, Arthur, wanted to protect James by conveying the property to James in satisfaction of James' debt, and James replied by letter that Arthur should do as he thought best. The lawyer whom Arthur consulted advised that the conveyance be made, and four days after the accident, Arthur and his wife executed the conveyance to James, the consideration being stated therein as one dollar and other valuable consideration; recorded it the following day and wrote James that the transfer of title had been made. This was all the real estate Arthur owned. About the middle of October James mailed the three receipts to Arthur. After the conveyance, Arthur continued to occupy the property and paid rent to James, but there was no agreement on James' part that the property would be held for or reconveyed to Arthur. Taxes were paid by Arthur at James' request and deducted from the rent. Interest on the loan was paid by Arthur nearly in full to the date of the conveyance.

I know that a transaction such as this between near relatives is regarded with suspicion, and yet it is not remarkable that a failing debtor should prefer to secure or pay a relative's claim rather than permit a stranger to take his property under execution. *Roe* v. *Moore, 35 N. J. Eq. 528; Silvers* v. *Potter, 48 N. J. Eq. 539.* I am also aware that the defence presented is one easily concocted. The receipts, for instance, could be readily manufactured to give color to the story, but upon examining

them, they have not the appearance of newness; on the contrary, the ink in which they are written shows that black hue which comes with time and they have well-defined creases where folded as though they had been laid away for some period and the paper is not white and clean, but discolored and soiled. To reject the uncontradicted story told by Arthur and James would be to brand both as perjurers, and that I am not willing to do.

Accepting their story as true, the instant case is similar to *Atlantic Refining Co.* v. *Stokes, 77 N. J. Eq. 119; affirmed, 78 N. J. Eq. 201,* and the principles there stated will determine this case. It was Arthur's right to prefer his brother as a creditor, as against the Eschmanns, and it was James' right, holding an honest debt, to accept such preference as security for or to extinguish his debt. It is not sufficient to defeat the conveyance that Arthur's purpose was, in part, to prevent complainants from taking his property to satisfy a judgment for damages; neither is it sufficient that James knew that such would be one result of the conveyance. James did not participate in such purpose, and in accepting the conveyance he made no reservation in favor of Arthur. If James knew that the conveyance to him would defeat the collection of complainants' debt, he also knew that his refusal of a deed would probably defeat the collection of his own debt. During the whole of the transaction James was in Buffalo, and when Arthur wrote him about the proposed conveyance, he remained passive and took no part in the transfer of title. It is true that he accepted the conveyance after notification of its execution, and I think he would have been foolish to have rejected it.

I shall hold the transaction *bona fide,* so far as the defendant James W. Lord is concerned, but the conveyance should be held to be no more than security for his debt. Evidence on behalf of complainants that the property is worth $3,500 to $4,000 is uncontradicted, and it would therefore be inequitable to deprive complainants of the equity in the property over that debt. Complainants may, if they desire, have an accounting to ascertain what is due James for principal and interest after charging him with the net rents, but if an account is not desired, I will find

that the amount now due him is $2,300, because practically all interest on his debt had been paid up to the time of the conveyance, and the rent he has since received will cover all subsequent interest, so that his whole claim cannot now be more than the principal of the debt.

I will order the property sold under the direction of a special master, and that out of the proceeds of sale there first be paid the expenses of sale; next the sum of $2,300 to James W. Lord, and, finally, the balance to complainants, to apply on their judgment. The defendant Lily M. Lord is not entitled to dower in the proceeds of sale. *Campbell* v. *Weber,* '79 *N. J. Eq. 519; S. C., 80 N. J. Eq. 553.*

No costs will be allowed to complainants or defendants.